**Frank E. WESLEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 4313.**

District of Columbia Court of Appeals.

Submitted July 31, 1967.

Decided Oct. 3, 1967.

---

Abraham Ziegler, Washington, D. C., for appellant.

David G. Bress, U.S. Atty., Frank Q. Nebeker, Franklin S. Bonem and Carl S. Rauh, Asst. U.S. Attys., for appellee.

Before HOOD, Chief Judge and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

This appeal is from a conviction by a jury of attempted unauthorized use of a vehicle. D.C.Code 1961, § 22–103; § 22–2204. We affirm.

The testimony on behalf of the Government was that on Wednesday, October 19, 1966 one Jack Little, owner of a beige, four-door 1965 Ford Falcon with Virginia license tags, left his automobile in a parking garage on L Street, between 13th and 14th Streets, N.W. The car was missing from the garage when he returned to claim it. Little did not see the car again until Monday, October 24 at the Fourteenth Precinct, although he was told it had been found the previous Thursday. The car was then in a damaged condition and would not start. Little testified that he had given no one permission to use his automobile.

Mrs. Bernice Kennedy testified that on Thursday, October 20, 1966, she looked out of a window of her apartment on the second floor at 605 53rd Street, S.E., and observed appellant in the company of two other men drive onto a parking lot in front of that address and park a brown, four-door Ford Falcon. She saw appellant get out of the car, take out a white handkerchief, wipe off the door handles, and depart. Mrs. Kennedy said to herself, "I'll bet that car is stolen," and called the police. In response to that call Officer Hunter and his partner from the Fourteenth Precinct came and removed the coil wire from the automobile so that it could not be driven away. Later Mrs. Kennedy saw appellant return to the car with a gas can, pour gas into the gas tank, and open the car trunk with a key. She again called the police and when the same officers responded, pointed appellant out to them. When he saw the officers appellant started running, was pursued and captured. At the close of the Government's case a motion for judgment of acquittal grounded on a failure to make out a prima facie case was made and denied.

Appellant took the stand and denied that he had driven Little's automobile or that he had had anything to do with it. He testified that he was at work when he was first supposed to have been seen by Mrs. Kennedy, but admitted being in the area when she pointed him out to the police. He ran "because all the officers from Fourteen knew me and my family, and they is continuously, you know, jigging me about a warrant they have for my brother, taking me for my brother." The motion for judgment of acquittal was not renewed at the close of all of the evidence.

Appellant first argues that the evidence was insufficient to support the verdict. The claimed insufficiency is that while the evidence admittedly established no one had permission to use Little's car, it failed to show which car, if any, appellant had attempted to use.[1] The claim is based upon the discrepant testimony about the color of the automobile, i. e., whether it was beige or brown, and on Little's inability to remember his license number along with a lack of testimony on this issue from any of the other witnesses.

We recognize the general rule that where, as here, a defendant takes the stand after the denial of his motion for judgment of acquittal at the close of the Government's case he is ordinarily deemed to have waived such motion and the court's ruling is not subject to review on appeal. Hall v. United States, 83 U.S.App.D.C. 166, 168 F.2d 161, 4 A.L.R.2d 1193 cert. denied, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948); Ladrey v. United States, 81 U.S. App.D.C. 127, 155 F.2d 417, cert. denied, 329 U.S. 723, 67 S.Ct. 68, 91 L.Ed. 627 (1946); Dickson v. United States, D.C. App., 226 A.2d 364 (1967); McRae v. United States, D.C.App., 222 A.2d 848 (1966).[2] We have nevertheless examined the entire record in this case and find that it contains sufficient evidence from which the jury could have found or inferred that the car left by Little in the parking garage and the one driven onto the parking lot by appellant were one and the same. The ques-

---

1. This claim was not mentioned, nor was the point argued at trial.

2. Cf. Cephus v. United States, 117 U.S. App.D.C. 15, 324 F.2d 893 (1963).

tion was one of fact for the jury, and we find no error.

Appellant next complains that it was error for the trial judge to interrupt the defense summation to the jury on the issue of attemped flight. The interruption occurred as follows:

> MR. ZIEGLER: One of the vital points in this case is that the defendant ran when the police officer approached him. Now, if it was me, most of the people in this Court, we wouldn't have run because we were innocent. And of course the Good Book tells us the wicked flee even when there is no pursuit. But we have a situation here in Washington and in this case—the defendant has testified that he had difficulty with the Police Department. The Police Department was picking on him or picking on his brother. And to me he is an illiterate youngster. I don't know how much education he has got.
>
> \* \* \* \* \* \*
>
> THE COURT: I am not going to permit you to make any argument to this jury that this young man for one reason or another is a part of a class or group that is picked on by the police.
>
> MR. ZIEGLER: I never said that.
>
> THE COURT: There is nothing in the record to justify that, and I don't want any such inference made in your argument. Now, \* \* \*.

There was a further protest that no such inference was intended, but counsel proceeded with the summation without making a proffer as to what the argument was intended to convey.

In summation to the jury counsel are allowed wide latitude in commenting upon the evidence. Pritchett v. United States, 87 U.S.App.D.C. 374, 185 F.2d 438 (1950), cert. denied, 341 U.S. 905, 71 S.Ct. 608, 95 L.Ed. 1344 (1951). Closing arguments must nevertheless be confined to comments on the testimony of record and any reasonable inferences to be drawn therefrom and where, as here, the bounds of proper argument are exceeded the court is obliged to take corrective action. Appellant emphasizes the point because he feels that appellee placed great reliance on his attempted flight as evidence of guilt. Actually, the prosecution scarcely mentioned appellant's flight in final argument. But even after the court's interruption there was no apparent reason why counsel could not have pursued his argument on this issue if he had confined himself to the testimony of record. That he did not choose to do so was a matter of his own judgment, not the result of any unwarranted interference of the trial judge.

A final assignment of error [3] is the denial of appellant's motion for mental observation made after the jury had retired to deliberate. The motion was based on counsel's professed feeling "that did not solidify" until after final argument when appellant turned to him and said: "What are you doing? Selling me out? You told the jury I was guilty." Appellant then turned his back on counsel and refused to talk with him. One additional reason given in support of the motion was that appellant's prior attorney thought there was something queer about him.

A trial judge may commit a defendant for mental examination under the provisions of D.C.Code 1961, § 24–301(a) either on the basis of his own observations or from prima facie evidence submitted to

---

3. Another claimed error, permitting appellant to appear at trial in prison garb, has apparently been abandoned.

him.[4] The decision to commit is a matter of discretion with the court and the exercise of that discretion will not lightly be disturbed. Neely v. United States, 80 U.S. App.D.C. 187, 150 F.2d 977, cert. denied, 326 U.S. 768, 66 S.Ct. 166, 90 L.Ed. 463, (1945). An order for a mental examination presupposes a prima facie showing of the need therefor, however, and we have no such evidence here. Aside from his active attempts to advise counsel during trial there was no evidence of any unusual behavior on appellant's part at any time. Indeed, he testified lucidly, if not credibly, without hesitation or confusion. It is hardly a mark of mental illness or incompetence to attempt to assist counsel at trial or, at its conclusion, to bluntly inform him of a certain dissatisfaction with his trial tactics. The trial judge was correct in denying the motion for mental examination upon such a meager showing.

*Affirmed.*

4. § 24–301(a) Whenever a person is arrested, indicted, charged by information, or is charged in the juvenile court of the District of Columbia, for or with an offense and, prior to the imposition of sentence or prior to the expiration of any period of probation, it shall appear to the court from the court's own observations, or from prima facie evidence submitted to the court, that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed to the District of Columbia General Hospital or other mental hospital designated by the court, for such reasonable period as the court may determine for examination and observation and for care and treatment if such is necessary by the psychiatric staff of said hospital. * * *