John N. DAVIS, a/k/a James E. Porter,
Appellant,

v.

UNITED STATES, Appellee.

Morris J. WARREN, a/k/a Morris Saunders,
Appellant,

v.

UNITED STATES, Appellee.

Nos. 8004, 8020.

District of Columbia Court of Appeals.

Argued Oct. 9, 1975.

Decided Dec. 30, 1976.

George A. Fisher, Washington, D. C., appointed by this court, for appellant Davis.

Mildred Matesich, Public Defender Service, Washington, D. C., for appellee Warren.

Paul N. Murphy, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Raymond Banoun, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

A dozen women during a period of some eight months in 1972 and 1973 were ab-

ducted into a green Chevrolet Vega or similar car and subsequently raped by one or more men. These brutal crimes became known as the "Green Vega" rape cases and ultimately resulted in the late night arrest of appellant Davis. The arresting officers took such action upon (1) a composite drawing of one of the assailants prepared by a police artist from descriptions provided by the victims; and (2) a description of the similar modus operandi employed in all these crimes, detailed in a flyer issued to all police personnel throughout the city. Davis and appellant Warren, who was arrested subsequently, went to trial together on multiple counts of an indictment resting on seven separate incidents of rape and were convicted (except Davis on one such incident) by a jury and sentenced to substantial terms of imprisonment.

Specifically, appellants were charged in a forty-four count indictment with kidnapping while armed,[1] armed robbery,[2] armed rape,[3] sodomy,[4] assault with a dangerous weapon,[5] and various lesser included offenses arising out of eight incidents involving eight women in the District of Columbia.[6] Appellant Warren was convicted of four counts of armed kidnapping, three counts of armed rape, two counts of armed robbery, and one count each of assault with a deadly weapon and armed assault with intent to commit sodomy. Appellant Davis was convicted of six counts of armed kidnapping, five counts of armed rape, two counts of armed robbery and one count each of assault with a deadly weapon and armed assault with intent to commit sodomy, and was acquitted on six counts.

## I. INTRODUCTION

On this appeal, appellants raise several issues relating to joinder of defendants for trial, the reasonableness of the officers' stopping appellant Davis, and other assertions of error before and during the trial. Before taking up the joinder issues, we describe briefly the form and content of the government proof at trial.

In essence, each of the seven victims took the stand and described to the jury the circumstances of the crimes committed against her, including the date and the place and method of abduction, and the person or persons, if she knew, who had committed those crimes. Other witnesses testified for the government in corroboration of each of the victims' testimony as to what she had done in each case immediately after the criminal attack. These non-victim witnesses were of course unable to make identification of any of the perpetrators. Thus each of the cases proved was in a sense a self-contained and separate account of a sordid event; there was virtual-

---

1. D.C.Code 1973, §§ 22–2101, –3202.

2. D.C.Code 1973, §§ 22–2901, –3202.

3. D.C.Code 1973, §§ 22–2801, –3202.

4. D.C.Code 1973, § 22–3502.

5. D.C.Code 1973, § 22–502.

6. The original indictment charged appellants with a total of 84 offenses involving 12 complainants. Forty counts against appellant Davis relating to four complainants were dismissed without prejudice before trial, and the indictment was retyped and renumbered. Five more charges against appellant Davis relating to a fifth complainant were dismissed without prejudice on the eve of trial. Thus, the jury ultimately considered a total of 23 counts against appellants jointly and 16 counts against appellant Davis alone, with regard to seven separate incidents. The jury convicted appellant Warren on all counts and convicted appellant Davis on all counts except those concerning the complainant J. (See chart, p. 1259, infra.)

ly no overlap of testimony from one incident to another by a government witness. The government proof at trial may be charted as follows:

| Date | Time | Victim | Place of Abduction | Method of Abduction | Weapons Used | Assailants |
|------|------|--------|--------------------|--------------------|--------------|------------|
| 6/19/72 | 11:30 p.m. | W. | 14th St. & Rhode Island Ave., N.E. | Offer of ride in green sports car resembling a Pinto | Knife | Davis; Warren |
| 11/12/72 | Midnight | M. | 4100 Wisconsin Ave., N.W. | Offer of ride in a green Vega | Revolver | Davis; Two unidentified males |
| 11/13/72 | 11 p.m. | T. | Howard University | Forced at gunpoint into car, a green Vega or Toyota | Revolver | Davis; One unidentified male |
| 11/20/72 | 6:30 p.m. | Wi. | Upper Wisconsin Ave., N.W. | Forced at gunpoint into car, a green Vega | Revolver | Davis; Warren; Two unidentified males |
| 11/20/72 | 11:30 p.m. | R. | Georgia Ave. & Sheridan St., N.W. | Offer of ride in a green Vega | Revolver | Davis; Warren; One unidentified male |
| 12/7/72 | 8 p.m. | J. | Wisconsin Ave. in Maryland | Offer of ride in a two-door car resembling a Mustang | Knife | Davis; Warren |
| 1/23/73 | Midnight | H. | East Capitol & 56th St., N.E. | Forced at gunpoint into car, a green Vega | Revolver | Davis |

It may be seen that the government charged in the indictment and presented evidence to the jury that appellant Davis alone had been responsible for crimes against the person of one victim; that an unidentified man or men participated with

appellant Davis in crimes against two other women; and that appellant Warren had participated with appellant Davis in attacks on four victims.

From the above chart summarizing the government evidence in the seven criminal assaults resulting in guilty verdicts, it is clear that the perpetrators of the offenses employed a remarkably similar modus operandi: Each incident commenced between 6:30 p. m. and 12:15 a. m.; the complainants were all offered rides to their destinations, and then either entered the car voluntarily or were forced to enter; and a knife or gun was used in every incident. We further note that five of the victims described the vehicle as a green Chevrolet Vega with black interior, while one described it as a small light green sports car with black interior and another described it as a two-door automobile with bucket seats and a dark interior. Finally, most of the complainants, according to the record testimony, were returned either to their homes or to the areas from which they had been abducted.

## II. JOINDER ISSUES

■■■ Appellant Warren argues that the prosecution's joinder of (1) the counts which charged appellant Davis, either by himself or with others never identified, for criminal assaults on three complainants in the same indictment with (2) *all* the counts charging Warren and Davis *jointly* with criminal assaults on four victims constitutes misjoinder under Super.Ct.Cr.R. 8(b), and accordingly requires reversal of his con-

victions. Assuming *arguendo* a proper joinder then appellant Warren contends that this joinder was prejudicial and the trial court committed reversible error in failing to grant his motion for relief from prejudicial joinder under Super.Ct.Cr.R. 14.[7]

■■■ Joinder of two or more defendants *and* multiple offenses in one indictment for trial is authorized by Rule 8(b) [8] which provides:

> Two or more defendants may be charged in the same indictment or information *if they are alleged to have participated* in the same. act or transaction or *in the same series of acts or transactions constituting an offense or offenses.* Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.[9] [Emphasis added.]

The issue we must decide is whether, within the meaning of Rule 8(b), Davis and Warren "are alleged to have participated . . . in the same series of acts or transactions constituting an offense or offenses."

In its brief, the government now characterizes the Davis-only offenses as "integral elements in a seven-month campaign of kidnappings and rapes *waged in concert by both appellants*" (Brief at 37; emphasis added) and claims that "appellants [Davis and Warren] acted in concert in a *continuing series of related sex offenses*" (Brief at 39; emphasis added). These statements

---

7. Appellant Davis also asserts in his brief that the joinder of offenses for trial was prejudicial and denied him a fair trial. We treat this argument as one made under Rule 14 rather than Rule 8, and we address it *infra.*

8. This rule is identical to Fed.R.Crim.P. 8 (b), so we are guided in our decision by cases interpreting the federal rule. *See* D.C. Code 1973, § 23–311(c) which codifies the Rule.

9. Rule 8(a) does allow joinder of offenses "of the same or similar character," such as those in the instant case, but *only* when the offenses have been committed by a single defendant. *See United States v. Roselli*, 432 F.2d 879, 898 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); 8 J. Moore, Federal Practice ¶ 8.05–.06 (2d ed. 1975).

on appeal in effect charge appellants with participating together in a conspiracy that was never alleged at trial and for which appellants were *not* indicted.[10] Moreover, it is not correct to assert that the crimes charged were "in a seven-month campaign . . . waged in concert by both" since they were charged *jointly* only for crimes on four separate occasions in June, November and December, and Davis and others unidentified or Davis alone were charged with sex offenses on other occasions during this same period.[11]

Further, we must reject the government's contention that the similarity of modus operandi in each of the crimes charged against the appellants jointly, as well as Davis and others and Davis alone, fulfills Rule 8(b)'s requirement that both defendants be charged with having participated in "a series of acts or transactions" within the meaning of the Rule. Rule 8(a) allows joinder of offenses "of the same or similar character," but Rule 8(b) does not. *See* 8 J. Moore Federal Practice ¶ 8.06[1] (2d ed. 1975). The series of acts envisioned by the drafters of Rule 8(b) is one in which the individual offenses are connected or interrelated in such a manner that proof of charges against one defendant would necessarily have to be introduced in proving the jointly-charged offenses, or that the government otherwise will benefit without further prejudicing the defendant. *See United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *King v. United States*, 355 F.2d 700 (1st Cir. 1966). Here, each offense charged occurred at a different time of day and at a different place, each complaining witness had her unique story to recount, and as a group, the seven offenses spanned a period from June to January.[12]

We are not persuaded that the situation in the instant case is analogous to and should be decided upon the basis of cases, including several cited by the government in its brief, where joinder of defendants

10. The Supreme Court in *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed. 2d 921 (1960), has specifically approved joinder of defendants *charged with conspiracy and otherwise unrelated transactions*, since the conspiracy count serves as a link drawing together all the offenses and creating overlapping issues and proof. *See United States v. Friedman*, 445 F.2d 1076 (9th Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971) (conspiracy to obtain and disseminate secret grand jury testimony joined with counts charging possession and use of unreleased grand jury transcripts, perjury, and obstruction of justice); *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) (conspiracy to violate and substantive violations of anti-racketeering statutes joined with counts charging false statements on tax returns); *Haggard v. United States*, 369 F.2d 968 (8th Cir. 1966), *cert. denied*, 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967) (conspiracy to defraud and substantive bank fraud counts joined); *United States v. Granello*, 365 F.2d 990 (2d Cir. 1966), *cert. denied*, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967) (conspiracy to evade taxes and counts charging wilfull failure to file tax returns joined).

11. At the hearing on Warren's motion to sever, the government posited its opposition solely on the fact that the crimes charged involved the same modus operandi, *viz.*, the same green Vega; and all occurred within a period of some seven months; and that appellants Warren and Davis knew each other and were both identified by *some* of the complaining victims as having been together in the green Vega. The government made no allegation in the indictment or assertion at trial that the particular offenses charged against Davis *only* were part of a conspiracy or were part of a connected or interrelated series of acts in which Warren and Davis jointly participated.

12. The ABA Standards Relating to Joinder and Severance (Approved Draft 1968) provide in Section 1.2(c)ii that two defendants may be joined "When, even if conspiracy is *not* charged and all of the defendants are *not* charged in each count, it is alleged that the several offenses charged . . . were *so closely connected in respect to time, place and occasion* that it would be difficult to separate proof of one from proof of others." (Emphasis added.)

has been upheld even though a conspiracy is not alleged. Generally these cases fit into three categories: (1) where the offenses are committed as a means to a specific common end, or where they are directed toward some shared goal;[13] (2) where one offense logically leads to another;[14] and (3) where the offenses are part of a common scheme or plan, involving the same place, a short period of time, and a similar modus operandi, so that there is necessarily a substantial overlap in proof of the various crimes and "it would be difficult to separate proof of one from the other."[15] *See* ABA Standards Relating To

13. An example is *Cataneo v. United States*, 167 F.2d 820 (4th Cir. 1948), where two individuals, Magliano and Drecchio, were indicted in two counts for making false statements in affidavits attached to a Selective Service form, and Magliano and another individual, Cataneo, were indicted separately for making false statements in a letter to the local draft board. In affirming the joinder of these offenses for trial, the court emphasized the common concern of the three defendants—the draft deferment of Magliano—and concluded that "[a]ll of the criminal activities alleged . . . relate to, and are logically and intimately connected together with this transaction. . . . The deferment of Magliano is the goal of all the activities herein alleged. . . ." Because of this *joint* goal, the offenses were deemed to be part of the "same series of acts or transactions constituting an offense or offenses." *Id.* at 823.

14. Two cases from this jurisdiction illustrate this second category. In *United States v. Wilson*, 140 U.S.App.D.C. 220, 434 F.2d 494 (1970), three men were indicted jointly for robbery, assault with a dangerous weapon, assault on a police officer, unauthorized use of a vehicle, and carrying a dangerous weapon, all arising out of the robbery of a drug store and subsequent flight in a stolen car. The court quickly disposed of any misjoinder issue since it found that "[t]he offenses are based on two or more connected acts, constituting part of a common scheme and plan and the appellants are alleged to have participated in the same series of acts constituting the offenses." Further, the court indicated that "[t]he joinder is also strengthened by the fact that each of the appellants aided and abetted those offenses charged against the other appellants." *Id.* at 224, 434 F.2d at 498. Similarly, in *Scheve v. United States*, 87 U.S.App.D.C. 289, 184 F. 2d 695 (1950), the court upheld the joinder for trial of four defendants, who were charged jointly with keeping a gaming table, with one of the four defendants, Joseph Scheve, who was charged with two counts of assault on Ricker, a customer of the gambling business. The court found that "there was an unbroken chain of causation between the defendants' gambling business, Ricker's losses, his wife's demand for return of some of them, Joseph Scheve's assault on her, Ricker's apparent attempt to intervene, and Scheve's assault on Ricker." *Id.* at 290, 184 F.2d at 696.

15. Cases upholding joinder of defendants in this category include *United States v. Franks*, 511 F.2d 25 (6th Cir.), *cert. denied*, 422 U.S. 1042, 1048, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975), and *United States v. Scott*, 413 F.2d 932 (7th Cir. 1969). In *Franks*, one indictment charged Franks and Britton with aiding and abetting the malicious damaging and attempt to destroy by explosives two Tennessee businesses on June 2, 1971, while a separate count charged Mitchell with knowingly transporting explosives across state lines without a license on June 1, 1971. This indictment was joined for trial with a second indictment charging Franks and Britton with causing others to commit physical violence to the same two Tennessee businesses on June 2, 1971, in furtherance of a plan or purpose to obstruct commerce. In upholding joinder of defendants for trial (*Id.* at 29), the court relied on language from *Baker v. United States*, 131 U.S.App.D.C. 7, 20, 401 F.2d 958, 971 (1968), a case involving joinder under Rule 8(a), which specified that "the predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." (Footnote omitted.) Even without a specific allegation of a relationship between the offenses, the court found that a sufficient connection had been developed to permit joinder of defendants. *Id.* at 29, 401 F.2d at 980.

Similarly, in *United States v. Scott, supra,* the indictment charged three defendants with secreting United States mail: count one charged Scott alone with an offense on October 27, 1965; count two charged Scott and Pearson with an offense on November 5, 1965; and count three charged Scott, Pearson, and Staples with an offense on November 8, 1965. The court indicated that "under Rule 8(b) a conclusion that acts were part of a common plan should be based on such factors as whether the transactions

Joinder and Severance 15–17 (Approved Draft 1968).

■ In the instant case, we can discern no specific or unitary goal toward which all the acts alleged in the indictment were directed, since each offense was committed independently on different dates commencing in June and ending in January and none depended for its furtherance or success on any of the others. Moreover, there is here no logical development of or relationship between the offenses because no crime necessarily led to or caused the subsequent offenses. And finally, in this case, there is no substantial overlap of proof of the various crimes; rather, each occurred and was proved at trial separate from the others.

Accordingly, we believe that the counts charging Davis alone and with others unidentified were misjoined with the counts charging Davis and Warren jointly. Unlike the decisions by the Ninth Circuit in *United States v. Friedman*, 445 F.2d 1076 (9th Cir.) *cert. denied*, 404 U.S. 958, 92 S. Ct. 326, 30 L.Ed.2d 275 (1971), and *United States v. Roselli, supra* at 901, we cannot agree that the misjoinder was harmless under Super.Ct.Civ.R. 52(a). The court in those cases concluded that there was little or no possibility of prejudice, whereas here appellant was subjected to a likelihood of prejudice.

First, joinder of defendants "involves a presumptive possibility of prejudice to the defendant." *King v. United States, supra* at 703. Such joinder is allowed despite this possibility of prejudice due to the cumulation of evidence against defendants, because it will "promote economy and efficiency and . . . avoid a multiplicity of trials." *Daley v. United States*, 231 F. 2d 123, 125 (1st Cir.), *cert. denied*, 351 U. S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484

(1956). Since the proof of each crime did not overlap, there was no such "economy and efficiency" served in this case by the joinder of the various counts against Davis and Warren with the counts against Davis alone and with others.

Second, we are constrained to note the prejudice to appellant Warren here was greatly increased since evidence of crimes neither charged against him nor related to him was introduced at his trial under circumstances that inevitably would lead the jury to consider him in fact a participant. Specifically, the jury heard, to Warren's obvious prejudice, that Davis and one other male, never identified, abducted and raped the victim T.; and that Davis and two other males, never identified, abducted and raped the victim M. The court in *King v. United States, supra* at 705 n.6, pointed out the special prejudice inherent in a situation where one defendant is joined with another defendant, who is alleged to have committed certain offenses with *unidentified third parties*:

> The government agent was unsuccessful in learning who was [defendant] McKenney's man on the other occasions. It seems to us that it might be natural for the jury to fill this void with King [a defendant]. If it did, the government was thereby showing other offenses by King not included in the indictment, the very thing it could not properly do. *Macdonald v. United States*, [264 F. 733 (1st Cir. 1920)] and of which in fact it had no evidence even warranting the inference.

Given the testimony indicating that Davis and Warren acted together criminally in some instances and *Davis and others unknown* acted criminally in other instances, it is but a small step for the jury to infer that these unidentified attackers were in fact Warren. Such an inference contains

have occurred in the same place, within a short period of time and using the same operandi." (413 F.2d at 935.) Applying that test, the court decided there was a suf-

ficient connection between the offenses to conclude they were part of a common plan so that joinder of defendants was appropriate. *Id.*

a real possibility of unwarranted and unfair prejudice to the defendant.

The dissent (Op. at p. 1271, n. 3), citing *Baker v. United States*, 131 U.S.App.D.C. 7, 22–23, 401 F.2d 958, 973–74 (1968); *United States v. Granello*, 365 F.2d 990 (2d Cir.), *cert. denied*, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967); and *United States v. Roselli, supra*, suggests that misjoinder "can be harmless error." While this may be true as a general proposition, those cases are inapposite to our situation here. In *United States v. Baker, supra*, 131 U.S.App.D.C., at 21, 401 F.2d at 972, the court specifically noted that evidence of larceny was "a *necessary part of the proof* of the 1962 tax evasion charge." (Emphasis added.) As described above, evidence of the Davis-alone and Davis-and-others' crimes was *not* necessary to the proof of the Davis-Warren charges. In *United States v. Granello, supra* at 995, the court expressly concluded that had the defendants there received separate trials the government could still have offered "the same proof that it offered at the joint [trial]." Clearly, proof relating to the Davis-alone and Davis-and-others crimes could *not* have been introduced at the separate trial of the Davis-Warren charges. Finally, in *United States v. Roselli, supra*, the disparate crimes charged against the defendants were linked together by an allegation of conspiracy.

■ We can only conclude that there was prejudice to Warren by joining the Davis-only and Davis-and-others counts with the Warren-Davis counts in the same indictment. Accordingly, appellant Warren's convictions must be reversed for misjoinder.[16]

■ Appellant Davis has raised an issue on appeal relating to severance which he did not raise at trial, *viz.*, that the trial court erred in refusing to sever for trial the seven offenses and 39 counts contained in the indictment because the *cumulative* effect of the evidence introduced to prove *all these counts* made a fair trial impossible, and that the trial court's failure to sever these counts deprived him of his right to a fair trial.[17] But the trial court here did not have an opportunity to rule on appellant Davis' request for severance since he made no motions either before or during trial, nor did he join in codefendant Warren's motions. Even on appeal Davis has made no allegation of any prejudice that was not anticipated before trial but that developed or was increased during the trial to such an extent that the court sua sponte should have ordered a severance under *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). We believe that appellant Davis was aware of all the facts comprising his claim of prejudice before trial, and consequently the issue should have been raised at that time rather than on appeal. *See* 8 J. Moore Federal Practice ¶ 14.02[2] (2d ed. 1975).[18]

16. Appellant Warren argued in the alternative that joinder of defendants in this case was prejudicial and that the trial court abused its discretion in failing to sever the defendants for trial. Because we have concluded that the defendants here were misjoined under Rule 8(b), we need not determine whether severance was required under Rule 14.

17. Super.Ct.Cr.R. 14 provides:
If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires.
To the extent appellant relies on Rule 8(a) to assert that the offenses were misjoined; we must reject his argument. As we have described in detail above, the seven incidents for which appellant Davis was indicted were quite similar in several respects, most particularly in the almost identical modus operandi. Since they were "of the same or similar character," we conclude that the counts were properly joined against him under Rule 8(a).

18. Even had a motion been made by Davis at trial and denied by the court, we would

## III. IDENTIFICATION OF APPELLANT WARREN

 Although our decision that the defendants were misjoined requires that appellant Warren's case be remanded and disposes of his appeal, one issue raised in his brief is likely to recur if he is retried and consequently we will address it briefly. *See Clemons v. United States*, 133 U.S. App.D.C. 27, 35, 408 F.2d 1230, 1238 (1968) (en banc), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

Warren argues that the trial court committed reversible error in refusing to suppress the photographic, lineup, and in-court identifications made by complainant R.[19] R. identified Warren as the third of three men who assaulted her after looking at an array of nine black and white photographs. She had previously described this third man as a Negro, about 24 years old, five feet ten or eleven inches in height, medium build, dark complexion, clean-shaven with a short Afro haircut, and with pimples on his face; he also had a gap between his upper teeth and a chipped front tooth, and was wearing a maroon dashiki with gold and black markings at the time of the offense. The group of photographs shown to R. contained only one picture of a man wearing a dashiki, and complainant identi-fied that individual, appellant Warren, as the third man who assaulted her.

We do not agree that the photographic identification procedure in this case was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and deny appellant Warren due process of law. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see Conyers v. United States*, D.C.App., 309 A.2d 309, 311 (1973). R. had ample opportunity to observe her attackers during the course of the abduction,[20] and she described appellant Warren correctly and in detail. Her selection of his photograph was immediate and unequivocal; she wrote on the back that she was "positive" he was the third attacker. Furthermore, at trial R. was unable even to recall whether the man in the photograph was wearing a dashiki.[21]

## IV. STOP AND ARREST OF APPELLANT DAVIS

 Appellant Davis argues that his stop by two police officers at 2:30 a. m. on February 11, 1973, was not based on probable cause to arrest or on articulable factors allowing a brief detention and investigation under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Ac-

---

find it difficult to hold on the facts of this case that the court abused its discretion in refusing to sever the counts. *See Arnold v. United States*, D.C.App., 358 A.2d 335 (1976) (en banc).

19. Complainant R. did not actually identify either appellant at the trial. Instead a stipulation was read to the jury stating that, if asked, she would identify appellant Warren as one of the three persons who assaulted her and one of the two passengers picked up by appellant Davis prior to that assault.

20. Although it is unclear how long R. was with her assailants, she testified that she first saw appellant Warren standing under a streetlight when Davis stopped to pick him up; that she talked with the two passengers (one of whom she identified as Warren) during a fifteen minute period when Davis had parked the car in a well-lighted

alley and that she observed Warren during that time; that she accompanied all three assailants into the lighted laundry room before she was raped; that even when the light in that room was turned off she could see the faces of her assailants by the light coming from an adjoining room; and that she rode back to her house with appellant Warren in the back seat and "probably" looked back at him.

21. Like the Supreme Court in *Simmons*, we acknowledge that the procedure used here was not the best in that the photograph of appellant was the only in the array of a man wearing a dashiki. Nevertheless we are not persuaded on the particular facts of this case that the suggestive element gave rise to a "substantial likelihood of irreparable misidentification." *Simmons v. United States*, *supra* at 384, 88 S.Ct. 967; *see Conyers v. United States*, *supra*.

cordingly, he argues that the photograph taken of him that morning, as well as all other evidence obtained as a result of that photograph, must be suppressed as products of an illegal detention. *See Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L. Ed.2d 676 (1969); *Gatlin v. United States*, 117 U.S.App.D.C. 123, 326 F.2d 666 (1963); *cf. Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Prior to the stop of Davis' automobile in February 1973, the District of Columbia police possessed a quantity of evidence showing similarity of the modus operandi in some dozen rapes [22] that had been committed during the preceding eight months. Around the end of January 1973, this evidence was compiled in a police flyer which described in some detail the time and place of each offense, the number and physical description of the assailants, and the description of the automobile used. Of the twelve incidents described, eight involved a Negro male driving a late model green Chevrolet Vega with a dark interior. Some of the more elaborate descriptions reported that the car also had bucket seats, two doors, a stick shift, clear plastic seat-covers, and blue and white license plates like Maryland plates, ending with the digits "91". A similar modus operandi for the eight "green Vega" rapes was described. Attached to the police flyer were composite drawings of a driver and passenger involved in several of the rapes.

These flyers and sketches were disseminated to Metropolitan Police officers early in February. In addition, on February 7, 1973, a teletype lookout was prepared, read at all police roll calls, and posted in all police stations alerting the officers to watch for a green Chevrolet Vega with blue and

white license plates and a black interior. Officers Rich and Robinson, who arrested Davis on February 11, 1973, were in possession of all this information.

According to their testimony at the suppression hearing [23] in September 1973, they stopped Davis in his car "due to the fact that we were looking for a green Vega and we knew there were Negro males involved in these rapes." Officer Robinson testified that he "observed a green Vega, two-door, with Maryland license plates, plastic seat covers." His partner stated he was able to see the car itself, a late model green Chevrolet Vega with black interior, the blue and white license tags, and the Negro male who was operating it. Although the license plates did not contain the numbers "91", neither officer professed familiarity with this alleged characteristic.

 While the Fourth Amendment clearly extends its protection to stops such as this, probable cause is not required. *See Terry v. Ohio, supra; Wise v. Murphy*, D.C.App., 275 A.2d 205, 212 (1971) (en banc). Instead the key is the reasonableness of the police activity, and the issue for determination is "whether the *officer's conduct under all the circumstances is reasonable*, so as to comply with the fourth amendment requirement of reasonableness." *Stephenson v. United States*, D.C.App., 296 A.2d 606, 608 (1972), *cert. denied*, 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed.2d 197 (1973) (emphasis in original); *see Terry v. Ohio, supra*, 392 U.S. at 21–22, 88 S.Ct. 1868.

 We are persuaded that the facts described above, which were known to the arresting officers at the time of Davis' stop, were sufficient to justify the limited

---

22. Not all these crimes were ultimately charged against one or both defendants.

23. It is important to distinguish between the pretrial testimony by government witnesses (mostly police officers) out of the presence of the jury and the testimony received at

trial. The pretrial testimony necessarily was overlapping since it dealt with police action in accumulating clues during the critical period of investigation prior to arrest; whereas, once the trial commenced the proof of each criminal incident did not overlap. *See* pp. 1258, 1261, *supra*.

police intrusion that occurred.[24] It was late at night, and the color, make and model of the car matched exactly the description of a car used in several separate incidents to transport the victims of night-time kidnappings and rapes. In addition, the driver of the car was a Negro male, and a single Negro male had been involved in several of the incidents. In light of the clear governmental interest in "effective crime prevention and detection," the initial stop in this case was reasonable.[25] *Terry v. Ohio, supra* at 22, 88 S.Ct. 1868; *see Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Stephenson v. United States, supra; United States v. Hines*, 147 U.S.App.D.C. 249, 455 F.2d 1317, *cert. denied*, 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972); *cf. United States v. Poole*, 161 U.S.App.D.C. 289, 495 F.2d 115 (1974), *cert. denied*, 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1975).

Moreover, the intrustion in this case was quite limited. *See Terry v. Ohio, supra,* 392 U.S. at 19–20, 88 S.Ct. 1868. The officers testified that they stopped Davis' car in order to check its interior for additional characteristics matching the descriptions in the flyer. After approaching the car, Officer Robinson observed the black interior and the plastic covers on the seats and then asked Davis for some identification. The pictures on these pieces of identification he gave the officers were then compared to the composite sketches attached to the police flyer. Davis was not frisked or

interrogated at this stage, nor was he even removed from his car. *Cf. Palmore v. United States*, D.C.App., 290 A.2d 573, 583 n.25 (1972), *aff'd*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1974); *Davis v. Mississippi, supra,* 394 U.S. at 727, 89 S.Ct. 1394.

We conclude, therefore, that not only was the initial stop justified under the *Terry* doctrine of reasonableness, but the intrusion which resulted from stopping Davis' car "was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio, supra,* 392 U.S. at 20, 88 S.Ct. at 1879; *see Cupp v. Murphy*, 412 U.S. 291, 294–96, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

▪ Assuming that the initial stop was lawful, then, we now must determine whether the subsequent arrest was based on probable cause. Judging from the totality of the circumstances, probable cause exists when an officer, "conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested." *Jackson v. United States*, 112 U.S.App.D.C. 260, 262, 302 F.2d 194, 196 (1962). In addition to the factors described above which justified the initial stop of Davis' car, the officers also had an opportunity to observe close-up the interior features of Davis' car, including the black

24. It is clear from the officers' testimony that this was *not* a spot check of an automobile such as that approved in *Palmore v. United States*, D.C.App., 290 A.2d 573, 582 (1972) *aff'd*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1974). The stop in the instant case was not random, but was done "to investigate some criminal behavior unrelated to the possession of a valid license and valid registration." *Id.* at 583 n. 24. Accordingly, in order to detain appellant Davis the officers must have had some articulable suspicion that Davis was involved in criminal activity. *Id.*

25. Although Davis himself was not acting suspiciously at the time of the stop, none-

theless we believe that facts known to the police officers were sufficient to create a reasonable, founded suspicion allowing the police to take the action they did. There were simply too many articulable similarities between Davis and his green Vega with blue and white tags and the information the officers possessed about actual offenses to categorize the police activity as an "inarticulate hunch" or an investigatory "dragnet." *See Terry v. Ohio, supra* at 22, 88 S.Ct. 1868; *Davis v. Mississippi, supra,* 394 U.S. at 727–28, 89 S.Ct. 1394; *Gatlin v. United States, supra.*

interior and plastic seat covers described by several victims. Further, they made a comparison between Davis' identification pictures and actual face and the composite sketches of one of the alleged assailants. Similar features observed included Davis' large eyes, facial hair, shape of chin, and full face. Both officers felt that the resemblance was "very strong" or "almost perfect." [26]

At that point the two officers believed they had sufficient grounds to arrest Davis in connection with the string of rapes described in the flyer. Nevertheless they called in a superior officer who also compared Davis' face to the composite sketches, agreed they were "very similar," and instructed the officers to charge Davis in the case.

 We conclude that the close likeness of appellant to the composite sketches, combined with his presence in an automobile almost identical to that described by seven rape victims, provided the officers with sufficient information reasonably to believe that a crime or crimes had been committed by Davis. *Jackson v. United States, supra; cf. United States v. Poole, supra.* Accordingly, we hold that the detention and subsequent transportation and photographing of Davis was lawful.[27]

*See Cupp v. Murphy, supra,* 412 U.S. at 296, 93 S.Ct. 2000.

## V. MISCELLANEOUS ISSUES

Finally, we take up and dispose of various errors asserted by appellant Davis.

First, Davis alleges that there was no proof of where the rape offenses against complainants T. and H. occurred and therefore that his constitutional rights were violated. According to Professor Wright, "[a]lthough an allegation of venue is not essential to the validity of an indictment or information, venue is a fact that must be proved at trial, except where venue, or proof of venue, has been waived." 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 307 at 601 (1969) (footnotes omitted). Professor Wright acknowledges that failure to prove venue may be raised by a defendant's general motion for judgment of acquittal at the close of all the evidence, but adds that "if defendant specifies grounds in support of a motion for acquittal, and does not mention venue, he has not preserved his objection for appeal." *Id.* § 306 at 601 (footnote omitted); *see United States v. Haley,* 500 F.2d 302, 305 (8th Cir. 1974); *United States v. Powell,* 498 F.2d 890, 891 (9th Cir.), *cert. denied,* 419 U.S. 866, 95

---

26. We reject the argument made in appellant Davis' reply brief that all police sketches are improperly suggestive and therefore should not be used to establish probable cause. Contrary to appellant's assertions, we believe that such sketches are reliable and useful tools which provide a more accurate model for police officers than does a verbal or written description. The sketches are based on information communicated directly to the artist by the victims, and the likenesses are criticized and approved by the victims before use. This method of identifying suspects is apparently well accepted in this jurisdiction. *See Adams v. United States,* D.C.App., 302 A.2d 232 (1973); *United States v. Poole, supra.*

27. The trial court found as a fact that probable cause existed and Davis was under arrest after the officers observed his car and his close resemblance to the composite pic-

tures. After Davis was taken to the police station and photographed, however, he was released, evidently without having been formally charged. Appellant Davis now argues that his subsequent arrest on February 13, 1973, based on a warrant signed and issued by a Superior Court judge at his home in Maryland, is a nullity because the court acted outside its territorial jurisdiction. An objection such as this based on "defects in the institution of the [prosecution] . . . may be raised only by motion before [trial]." Super.Ct.Cr.R. 12(b). Since appellant Davis did not raise this objection at trial, his attempt to raise it on appeal is untimely, and is waived absent any showing of prejudice. *See Nichols v. United States,* D.C.App., 343 A.2d 336, 341 (1975). And, in any event, so long as the police have probable cause, an arrest without a warrant is lawful. *See United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

S.Ct. 121, 42 L.Ed.2d 103 (1974); *United States v. Rivera*, 388 F.2d 545, 547–48 (2d Cir.), *cert. denied*, 392 U.S. 937, 88 S.Ct. 2308, 20 L.Ed.2d 1396 (1968); *Gilbert v. United States*, 359 F.2d 285, 288 (9th Cir.), *cert. denied*, 385 U.S. 882, 87 S.Ct. 169, 17 L.Ed.2d 109 (1966).

█ In the instant case, Davis' attorney made a motion for judgment of acquittal at the close of the government's case, and specified two grounds; the insufficient identifications of Davis by the complainants (and specifically the absence of any identification by the victim T.) and the absence of any scientific evidence such as hair or fiber analysis linking Davis to any of the crimes. As the Second Circuit ruled in *United States v. Rivera, supra* at 548, where the defendant "does specify grounds for the motion [for judgment of acquittal] and omits mention of venue we must conclude that he cannot be considered to have raised a question concerning the place of trial." Thus we hold that appellant Davis has waived his right to object to the government's alleged failure to prove venue of two rape charges.[28]

█ We also reject appellant Davis' contention that he suffered prejudice requiring reversal when the trial court allowed the jury to hear evidence about complainant W.'s rape in Maryland with which Davis was not charged. We note that she described her sexual assault only briefly as part of the total incident she was recounting, and in order to explain the circumstance of the offense actually charged. *See Wooten v. United States*, D.C.App., 285 A.2d 308, 309–10 (1971). There were no questions that directly elicited this information, nor was the incident described in inflammatory terms or in any detail. Finally, there was substantial evidence of appellant's guilt of the other offenses, and the challenged testimony was only a minor portion of the evidence adduced at trial. Under these circumstances, we are not persuaded that appellant Davis' defense was prejudiced by these revelations to such an extent that he was denied due process or a fair trial.

█ Davis also argues that the prosecutor's closing argument improperly and prejudicially suggested that on the night of his arrest, when he was seen in his car talking to two women on the street,[29] he was in reality looking for a new victim to rape, and that this was part of the same pattern. Although these statements may have been unnecessary and improper,[30] in light of the overwhelming proof against

28. The Ninth Circuit in *Gilbert v. United States, supra*, acting "[o]ut of an abundance of solicitude for the rights of appellant," reviewed appellant's claim of lack of proof of venue despite its prior finding that the issue had been waived. *Id.* at 288. Following this approach, we conclude that there was at least some proof which could lead to a reasonable inference that the offenses occurred in the District of Columbia. *See United States v. Haley, supra* at 305. Complainant T. was abducted from the vicinity of Howard University in Washington, D. C., driven around for 30 minutes, taken into a housing project and raped, and then returned to her dormitory at the University. Complainant H. was abducted near East Capitol Street and 56th Streets, N. E., in Washington, D. C. She was driven west past a Shrimp Boat restaurant on East Capitol Street which the trial judge judicially noted was located in the District of Columbia. She was then taken behind an apartment building and raped and was subsequently driven to Maryland and released near her home. Although this evidence may not constitute overwhelming proof of venue, proof beyond a reasonable doubt is not necessary, nor is direct proof required. *See* C. Wright, Federal Practice and Procedure: Criminal § 307 at 601 (1969); *cf. Best v. United States*, D.C. App., 237 A.2d 825, 826 (1968).

29. Evidence of this exchange was admitted at trial to impeach Davis, who earlier had denied talking to any women at the time and place. The evidence was introduced in the testimony of a U. S. Park Police officer who gave Davis a traffic ticket after the women departed and Davis made an illegal turn.

30. *But see Wesley v. United States*, D.C. App., 233 A.2d 514 (1967); *United States v. Fench*, 152 U.S.App.D.C., 325, 470 F.2d 1234 (1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

appellant Davis, the minimal reference to this occurrence at the end of all the evidence, and given the court's instruction to the jury that statements and arguments made by counsel are not evidence, we cannot say that the comments were·so prejudicial as to substantially sway the judgment of the jury and require reversal of Davis' convictions. *See Medina v. United States,* D.C.App., 315 A.2d 169, 171 (1974).

[20] Davis next argues that the trial court's instruction on corroboration, which listed a variety of factors that might be deemed corroborative of the *corpus delicti,* unduly emphasized the prosecution's theory of the case.[31] Although the trial court responded to appellant's objection by remarking that the instruction came out stronger than he had intended, nevertheless it was a proper recitation of various factors that a jury may consider to be corroboration. *See, e. g., In re W.E.P.,* D.C.App., 318 A. 2d 286, 288–89 (1974); *Moore v. United States,* D.C.App., 306 A.2d 278, 280–81 (1973); *Evans v. United States,* D.C.App., 299 A.2d 136, 139 (1973). Even if the corroboration instruction did over-emphasize the government's evidence, having reviewed the instructions as a whole, we cannot say that appellant was prejudiced by this instruction. *See United States v. Martin,* 154 U.S.App.D.C. 359, 363, 475 F. 2d 943, 947 (1973); *United States v. Thurman,* 135 U.S.App.D.C. 184, 185, 417 F.2d 752, 753 (1969), *cert. denied,* 397 U.S. 1026, 90 S.Ct. 1269, 25 L.Ed.2d 535 (1970).

■■■■ Appellant Davis also argues that a reasonable juror must necessarily have had a reasonable doubt about his guilt, and therefore his motion for judgment of acquittal should have been granted. Having reviewed the evidence adduced at trial with respect to each offense and each count in the indictment, we are unable to state that there was "no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Lumpkin,* 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971); *see Crawford v. United States,* 126 U.S.App.D.C. 156, 375 F.2d 332 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 160 F.2d 229, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L. Ed. 1850 (1947).

■■■■ Finally, appellant Davis argues that his conviction for assaulting Wi. with a deadly weapon, D.C.Code 1973, § 22–502, must be set aside since it is a lesser included offense of armed robbery, D.C.Code 1973, § 22–2901. *See United States v. Johnson,* 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973). The offense of assault with a deadly weapon must be set aside as a lesser included offense of armed robbery only when the conviction for armed robbery arose out of the same act of the defendant. Here, the indictment charged the assault as a distinct offense that occurred after the completion of the kidnapping, rape, and robbery of the victim Wi. Moreover, the trial court carefully instructed the jury not to consider the assault count unless they found that it was an independent offense, distinct in time and circumstance from the earlier offenses. Finally, we note that the testimony of Wi. at trial was that the gun first used by her attackers to force her to submit was pointed at her later as the assailants prepared to leave when they instructed her not to leave the building until they were gone. The jury's conviction of appellant for this offense of necessity includes a finding that

---

31. The factors listed by the trial court included: (1) a prompt report of the offense, (2) medical evidence, (3) the condition of a complainant's clothing, (4) bruises or scratches on the complainant, (5) the emotional condition of a complainant, (6) the opportunity of the defendant to commit the offense, (7) the circumstances surrounding the crime, including the mode of transportation, (8) the presence of sperm or blood on the clothes or body of a complainant, (9) the conduct of the accused at the time of his arrest, (10) demonstrative or testimonial evidence substantiating or refuting a complainant's testimony and prior statements, and (11) the complainant's maturity or apparent motive to falsify or exaggerate.

the assault occurred after the conclusion of all the earlier crimes, and consequently the conviction need not be set aside as a lesser included offense.[32]

## VI. CONCLUSION

The convictions of appellant Davis are upheld in all respects and the judgments against him are affirmed. The convictions of appellant Warren cannot stand because they occurred after a misjoinder under Rule 8(b); and we are unable to conclude under the particular circumstances here that such misjoinder was not prejudicial. Hence, the judgments against him are reversed and his case is remanded for a new trial.

*So ordered.*

GALLAGHER, Associate Judge, concurring and dissenting:

I concur in the result reached in the affirmance of the convictions of appellant Davis.

I do not agree that there was a misjoinder under Rule 8(b) as to appellant Warren and dissent from the reversal of his convictions. I believe the initial joinder was proper and therefore the denial of the motion to sever may be overturned by this court only if there has been an abuse of discretion. *United States v. Wilson,* 140 U.S.App.D.C. 220, 226, 434 F.2d 494, 500 (1970); *United States v. Franks,* 511 F.2d 25, 30 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975). Rule 8(b) provides that joinder is proper when the defendants have participated in the same "series of acts or transactions." I conclude that they were conducted in such a similar manner as to form a modus operandi and that although conspiracy was not alleged there was a continuing "common plan" in this series of rapes. *See United States v. Scott,* 413 F.2d 932 (7th Cir. 1969), *cert. denied,* 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970).

It is well-settled that joinder is improper when the crimes alleged are merely similar in character, *see, e. g., United States v. Roselli,* 432 F.2d 879, 898 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); C. Wright, Federal Practice and Procedure: Criminal § 144 (Supp.1975), but this case presents a series of rapes so similar in method that it cannot reasonably be said that they were simply separate criminal acts.[1] Appellants were on a continuing predatory search for victims; rather than being seven separate acts, their rampage, conducted in the time span of slightly more than seven months with four of the rapes occurring in a two-week period, was a "series of acts" within the contemplation of Rule 8(b). Conspiracy need not be alleged for Rule 8(b) to apply. C. WRIGHT, *supra* at § 144.

Appellant alleges that he was prejudiced by being tried with a person who was indicted on seven counts of rape when appellant was only indicted on counts involving four women. The rule specifically provides, however, that "such defendants may be charged in one or more counts together or separately and *all of the defendants need not be charged in each count.*" (Emphasis added.) Although there is always a certain amount of prejudice inherent in the joining of defendants,[2] I do not find that there was substantial prejudice.[3] Additionally, the trial judge informed the jury,

---

32. We decline to adopt the government's concession that the assault conviction was a lesser included offense of armed robbery and therefore should be set aside.

1. In addition to the similarities mentioned in the majority opinion there were other similarities in many of the rapes. Two of the victims were offered a ride by Davis and after accepting the ride Davis drove only a couple of blocks before picking up Warren, once indicating he was a hitchhiker and once indicating he was a friend. In the case of another victim, Davis drove up and asked both Warren and the victim at the same time if they would like a ride. Also several of the victims were taken to either an abandoned building or construction site to be raped.

2. *King v. United States,* 355 F.2d 700, 704 (1st Cir. 1966).

3. When no undue prejudice to the defendant is present and the original joinder was proper,

both at the beginning of the trial and during the instructions, that they must consider the guilt or innocence of each defendant separately and that if they found one defendant guilty it should have no bearing upon the other defendant. I must assume that the jury heeded the instructions. Finally, the evidence against appellant Warren was extremely strong. There was considerable independent evidence of his guilt.

Furthermore, I believe there was no substantial prejudice on this record and, consequently, I see no reversible error. D.C. Code 1973, § 11–721(e). I dissent from the reversal on appellant Warren.

appellate courts are slow to overturn a trial court's refusal to sever. *E. g., United States v. Robinson,* 139 U.S.App.D.C. 286, 432 F.2d 1348 (1970) ; *Wiley v. United States,* 277 F.2d 820 (4th Cir.), *cert. denied,* 364 U.S. 817, 81 S.Ct. 47, 5 L.Ed.2d 47 (1960). Even if the original joinder were incorrect as the majority asserts, this circuit and others have held that such misjoinder can be harmless error. *Baker v. United States,* 131 U.S.App.D.C. 7, 22–23, 401 F.2d 958, 973–74 (1968) ; *United States v. Roselli,* 432 F.2d 879, 901 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) ; *United States v. Granello,* 365 F.2d 990 (2d Cir. 1966), *cert. denied,* 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967). This is especially true when, as here, the government's proof was very strong.