John L. BUSH, Appellant,

v.

UNITED STATES, Appellee.

Troy T. TOLBERT, Appellant,

v.

UNITED STATES, Appellee.

Brevard L. BROWNER, Appellant,

v.

UNITED STATES, Appellee.

Steve L. WASHINGTON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–125, 84–205, 84–206 and 84–581.

District of Columbia Court of Appeals.

Argued March 27, 1986.

Decided Oct. 20, 1986.

**188**

Russell F. Canan, Washington, D.C., appointed by this court, for appellant Bush.

Vincent A. Jankoski, Washington, D.C., appointed by this court, for appellant Tolbert.

Steven R. Kiersh, Washington, D.C., appointed by this court, for appellant Browner.

William T. Morrison, Washington, D.C., appointed by this court, for appellant Washington.

Deborah Young, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., Washington, D.C., and Kathleen E. Voilker, Asst. U.S. Attys., were on brief, for appellee.

Before NEBEKER, NEWMAN and BELSON, Associate Judges.

BELSON, Associate Judge:

Following a jury trial, appellants Browner, Bush, Tolbert and Washington were convicted of conspiracy to obstruct justice,[1] two counts of obstruction of justice,[2] and two counts of kidnapping while armed.[3] In the same trial, appellants Browner and Bush were convicted of armed robbery,[4] first-degree burglary while armed,[5] and two counts of bribery.[6] Appellant Browner was also convicted of violating the Bail Reform Act.[7] Appellants raise numerous issues on appeal. Initial joinder of defendants, appellant Tolbert contends, was improper because he was not alleged to have participated in either the burglary or robberies whose prosecution he was charged with trying to hinder. Appellants Washington and Tolbert assert that denial of severance was an abuse of discretion. Ap-

1. D.C.Code § 22–105(a) (1981).

2. D.C.Code § 22–722(a)(1) (1985 Supp.).

3. D.C.Code §§ 22–2101, –3202 (1981).

4. D.C.Code §§ 22–2901, –3202 (1981).

5. D.C.Code §§ 22–1801(a), –3202 (1981).

6. D.C.Code § 22–713 (1985 Supp.).

7. D.C.Code § 23–1327(a) (1981).

pellants Bush, Browner and Tolbert perceive reversible error in the trial court's failure to give a special jury instruction regarding the defense of consent to the kidnapping charges. Having reviewed these points, and all others raised by appellants, we conclude that the judgments of conviction should be affirmed in all respects.

I

The nature of appellant's arguments and our resolutions of them require a rather full discussion of the facts. During the morning of September 9, 1981, appellants John Bush and Brevard Browner, accompanied by Mabel Galloway and Darlene Harvey, rode together in Harvey's car. As Harvey drove near Second and O Streets, S.W., she told Bush she knew a man named David who lived in the area, but she was not sure if he had "[a]nything that was worth taking." While Harvey remained with the car, Bush, Browner and Galloway entered an apartment building at 112 O Street, S.W. David Sandridge, who lived at that address, responded to a knock on his door by opening it, only to be forced to retreat by a woman and two masked men with pistols. The intruders departed with clothes, money and a camera.

After Bush, Browner and Galloway returned to Harvey's car, the foursome drove to 11th and O Streets. On this occasion, Bush pulled a gun on a man, and told Galloway to reach into the man's pockets. Galloway complied, and retrieved money and a wallet.

Browner, Harvey and Galloway were apprehended when Harvey's car was stopped shortly after the second incident, but Bush escaped on foot. Within about forty-five minutes, Sandridge positively identified Browner and Galloway as two of the three persons who had robbed him.

Browner, Harvey and Galloway were indicted for various offenses arising out of the incidents of September 9, 1981. Galloway and Harvey entered guilty pleas to two counts each of robbery and accessory after the fact to robbery, respectively, and agreed to testify against Browner at his trial, which was scheduled to begin on Thursday, March 24, 1983. All other charges against the two women were dropped. Three days before the trial was to begin, Harvey received a subpoena. On the eve of the trial, Browner and Bush offered to pay Galloway and Harvey not to testify.

On the morning of March 24, Harvey had one of her friends put a scratch on her back, providing Harvey with an excuse to avoid testifying. Bush gave Harvey eight dollars and three bags of heroin. Troy Tolbert, who told Harvey he was Browner's cousin, drove her to the hospital.

Later, Harvey learned from Galloway that Browner's trial had been postponed until Monday, March 28. While Harvey was at home Friday evening with Galloway and two of their friends, Browner and Steve Washington paid a visit. After briefly discussing the continuation of the trial and whether Sandridge would be able to identify Browner at trial, Browner and Washington left. Later, Browner returned, along with Bush. Following some discussion about leaving the house, Browner, Bush, Galloway and Harvey went to another apartment at 2201 M Street, an apartment Harvey had been told belonged to a brother of Washington. A man named Kevin was present in the apartment, as was Steve Washington. Bush and Browner left the apartment about ten or fifteen minutes after arriving.

While at the apartment, Harvey went out to buy cigarettes. At Washington's suggestion, Kevin accompanied her. Later, when Harvey tried to leave the apartment to meet someone, she was stopped at the door by Kevin, who was holding a gun. Harvey asked Kevin why she could not leave, whereupon Washington intervened and told Harvey that Kevin "was just doing his job." Harvey and Galloway spent the entire night at the apartment.

The next day, Saturday, Browner and Tolbert brought food to the apartment. That evening, Kevin, Harvey and Galloway returned to Harvey's home. Bush and Browner arrived, and discussed the idea of Harvey and Galloway going to a motel to avoid being served with a subpoena. When told Kevin had pulled a gun on Harvey, Browner said he "was going to have a talk with him." Browner drove Bush, Harvey and Galloway to the Capitol City Inn, picking Tolbert up along the way. Once they arrived, Tolbert rented a room. Bush, Harvey and Galloway spent the night there.

On Sunday, Bush took the women to a different room in the same motel. When they first arrived in the new room, Browner, Kevin, and a man named Jay were there. Harvey and Galloway stayed in the motel room until Monday morning, when Galloway departed with Browner and Bush for a house on E Street. Harvey remained at the motel with a friend named Anthony until he took her to the E Street house. Galloway, Browner, Bush, Kevin, Jay, and Browner's girl friend, Marsha, were already there. Harvey and Galloway stayed at the E Street house with Kevin, Jay, and Marsha until Tuesday morning. During that time, whenever either Harvey or Galloway would move from one room to another, either Kevin or Jay would follow.

On Tuesday, Tolbert drove Harvey, Galloway, Kevin and Jay back to the Capitol City Inn. Harvey, Galloway, Kevin and Jay remained in a room there until Sunday. Tolbert visited each day and left money for food with Kevin or Jay. During that week Harvey did not leave the room. Galloway went out once for five or ten minutes, accompanied by Jay. Either Kevin or Jay would remain with the women while the other man went out to buy food. Jay showed Galloway and Harvey a gun he kept in a bag. He also showed them two bullets, and said one was for Galloway and one was for Harvey.

During the week Tolbert showed Harvey and Galloway a newspaper article, which listed their names as missing government witnesses in the Browner case. On more than one occasion, Harvey and Galloway asked to leave, but they were told they could not do so until Browner's trial had concluded. On Sunday, April 3, 1983, Tolbert did not show up at the motel. Because no one else had money to pay for the room, everyone left.

## II

■ Appellant Tolbert argues that, because he was charged only with respect to the cover-up of the robberies and burglary, not the underlying crimes themselves, the trial court erred in joining his case with those of Bush and Browner, who stood trial on charges relating to both the underlying crimes and subsequent cover-up.[8] Where, as here, a defendant raises an issue of improper joinder of defendants, Super Ct. Crim.R. 8(b) governs. *Ray v. United States*, 472 A.2d 854, 857 (D.C.1984). Pursuant to its terms, joinder of defendants is allowed where the defendants "are alleged to have participated ... in the same series of acts or transactions constituting an offense or offenses." The crucial question for us to resolve on these facts is whether Tolbert was charged with participating in the same "series" of acts, when he was charged not with the underlying robberies and burglary, but only with kidnapping while armed, conspiracy to obstruct justice and obstruction of justice designed to conceal the identity of the robbers and burglars.

*Jackson v. United States*, 329 A.2d 782 (D.C.1974), *cert. denied*, 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975), points in favor of upholding the joinder of which Tolbert complains. In *Jackson*, John Jackson was charged with the underlying crime of murder. *Id.* at 785. The alleged murderer's friend and codefendant, Howard

---

8. Appellant Washington, though similarly situated to Tolbert regarding this issue, did not raise the issue on appeal.

Schofield, was indicted as an accessory after the fact and for obstruction of justice. *Id.* Schofield was not charged with involvement in the underlying murder, but with allegedly threatening and intimidating a key witness in the murder case. *Id.* Jackson asserted that the joinder of his case with Schofield's was improper under Rule 8(b). *Id.* at 786. This court rejected the assertion on the ground that the indictment alleged participation by Schofield sufficient to bring him within the "same series of acts or transactions" language of Rule 8(b). *Id.* at 787.

Our case closely parallels *Jackson.* Tolbert, like Schofield, was charged with endeavoring to keep a key witness from testifying at a third person's trial. In both cases, the obstruction of justice charges were tried jointly with the underlying criminal charges (murder in *Jackson,* robberies and burglary here) even though the alleged obstructor of justice was not charged with participating in the underlying crime. *Jackson* is precedent for affirmance here because the logical relationship between the joined offenses was the same in *Jackson* as it is in this case.[9]

The plain language of Rule 8(b) also supports the trial court's joinder of defendants with respect to the underlying crimes and cover-up alleged in the indictment. Joinder of defendants is allowed under Rule 8(b) when defendants "are alleged to have participated ... in the same series of acts or transactions constituting an offense or of-

fenses." There is nothing in the language of the rule itself which requires that a person participate in more than one phase of a "series" of acts to come within the rule's coverage. Here, as in *Jackson,* a defendant participated in a cover-up designed to protect another from prosecution. That appellant did not participate in multiple phases of the sequences of acts does not mean he did not participate at all.

We cannot agree with appellant that upholding joinder on this fact pattern would be inconsistent with *Davis v. United States,* 367 A.2d 1254 (D.C.1976), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977). *Davis* indicates that even where, as here, no conspiracy is alleged embracing both the underlying crimes and the cover-up, joinder of defendants is permitted "where one offense logically leads to another." *Id.* at 1262. The *Davis* court, to illustrate what this category of cases includes, cited *Scheve v. United States,* 87 U.S.App.D.C. 289, 184 F.2d 695 (1950), with approval. *Davis,* 367 A.2d at 1262 n. 14. In *Scheve,* as we explained in *Davis,* the court upheld joinder of defendants where four were charged with keeping a gaming table and one of the four, Joseph Scheve, was also charged with an assault on a customer, Ricker, stemming from a gambling dispute. *Id.* The *Scheve* court discerned " 'an unbroken chain of causation between the defendants' gambling business, Ricker's losses, Ricker's wife's de-

9. In *Jackson,* the court upheld joinder without specifically referring to the obstruction of justice charge as a basis for joinder. We do not find this omission significant. The trial court submitted the obstruction of justice charge to the jury, although the jury acquitted Schofield of that. *Jackson,* 329 A.2d at 785. In contrast, the trial court granted Schofield's motion for judgment of acquittal on the accessory after the fact charge, keeping that charge from even going to the jury. *Id.* at 785 n. 5. On appeal, Jackson maintained that the accessory after the fact charge had been "included in the indictment as an artifice to obtain a joint trial." *Id.* at 786. Under the circumstances, it is understandable that the *Jackson* court chose to emphasize that the dismissal of the accessory after the fact charge did not mean the initial joinder was

erroneous, because "the *allegation* of participating [contained] in the indictment justifies the joinder." *Id.* at 787 (emphasis added) (citing *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *see also* 1 C. Wright, Federal Practice and Procedure: Criminal § 144 at 325 (1969)). Insofar as the *Jackson* opinion discloses, the logical connection between the murder charge and the other two charged offenses, accessory after the fact and obstruction of justice, was the same. The *Jackson* court described the charges against Jackson's codefendant as "being an accessory after the fact by threatening a material witness and with obstructing justice *by threatening and intimidating the same witness.*" *Jackson,* 329 A.2d at 785 (emphasis added).

mand for return of some of the lost money, Joseph Schere's assault on her, Ricker's apparent attempt to intervene, and Scheve's assault on Ricker.'" *Id.* (quoting *Scheve,* 87 U.S.App.D.C. at 290, 184 F.2d at 696).

■ We think that in our case the logical connection between the robberies and burglary on the one hand, and obstruction of justice and kidnapping on the other, is at least as close as the several step connection between the keeping of a gaming table and subsequent assault found sufficient for joinder in *Scheve,* an analysis we approved in *Davis.* While the cover-up for which Tolbert stands convicted was not the inevitable result of the commission of the underlying crimes, the cover-up surely was a sequel to those crimes. Thus, our review of the cases and reading of Rule 8(b) persuade us that the joinder of which defendant Tolbert complains was not in error.

### III

■ Appellant Tolbert argues that, even if joinder was permissible under Rule 8(b), the trial court abused its discretion under Super.Ct.Crim.R. 14 in denying severance, given the prejudice to Tolbert of a joint trial with those accused of the underlying offenses.

Tolbert's argument must overcome the precept that "when two or more defendants are charged with jointly committing a criminal offense, there is a strong presumption that they will be tried together." *Cunningham v. United States,* 408 A.2d 1240, 1243 (D.C.1979). Moreover, a "defendant is not entitled to severance merely because the evidence against a codefendant is more damaging than the evidence against him. Manifest prejudice occurs

only where the evidence of a defendant's complicity in the overall criminal venture is *de minimis* when compared to the evidence against his codefendants." *Christian v. United States,* 394 A.2d 1, 21 (D.C. 1978) (citations omitted), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979).

While Tolbert's involvement in the robberies, burglary, and cover-up was limited to the cover-up, the government introduced evidence that Tolbert drove Harvey to the hospital when she was under a subpoena to testify at Browner's trial, rented a motel room where Harvey and Galloway stayed one night, brought food and money to yet another motel room where Harvey and Galloway were kept for several days, and showed them a newspaper article referring to them as missing government witnesses in the Browner trial. Viewing the entire course of events, we cannot say that, in comparison to the evidence against his codefendants, the evidence against Tolbert was *de minimis.*

■ We point out also the existence of another factor that diminished any prejudice that the joint trial might have entailed. The jury was aware that only two men were involved in the robberies and burglary. Those two men, Browner and Bush, were before the court. This circumstance eliminated any possibility that the jurors might speculate that Tolbert participated in the robberies and burglary. Given the absence of any risk that Tolbert might have been thought to have been a participant in the robberies and burglary, and the evidence of significant involvement by Tolbert in the cover-up, we discern no abuse of discretion in the trial court's denial of Tolbert's motion for severance.[10]

---

10. Appellant Washington also insists that the trial court abused its discretion in denying his Rule 14 motion for severance of the defendants. For the reasons outlined above, there was no risk that the jury would speculate that he was one of the robbers or burglars. Testimony that Washington told Harvey that Kevin was just doing his job when Kevin used a gun to prevent Harvey from leaving, along with other evidence

at least consistent with knowing participation in a cover-up, amounts to more than *de minimis* evidence when compared to that introduced against his codefendants. Accordingly, we hold that the trial court did not abuse its discretion in denying Washington's motion for severance.

The trial court was also within its discretion in denying appellant Browner's motion for severance of the charges of burglary and armed

## IV

Appellants Bush, Browner and Tolbert contend that the trial court abused its discretion in refusing to give a specific and separate jury instruction regarding the defense of consent to the charge of kidnapping while armed. At trial, appellants argued that government witnesses Harvey and Galloway had not been held against their will, but were seeking to avoid having to testify in the Browner trial.

The defense theory of the case was not without evidence to support it. As previously noted, Harvey testified that she had a friend put a scratch on her back so that she could go to the hospital on the day the Browner trial was originally scheduled to begin. Galloway admitted that on Sunday night, March 27, 1983, she engaged in consensual sexual relations with appellant Bush, and had an opportunity to leave the Capitol City Inn motel room to which Bush had taken the two women. Galloway also testified that she and Harvey voluntarily used illegal drugs with Bush on at least one occasion while staying at the Capitol City Inn. The evidence also showed that Harvey and Galloway were no strangers to Bush. On the contrary, for a four-month period sometime in 1979 or 1980, Harvey was Bush's girlfriend, according to Harvey. Galloway testified that she had known Bush since December 1981, and that she was Bush's girlfriend as of March 1983. There was also evidence tending to show that Harvey and Galloway considered Browner to be a friend. We recount these aspects of the evidence presented at trial in order to underscore that the consent defense was a substantial one, not to suggest that there was insufficient evidence to sustain appellants' convictions for kidnapping while armed.[11]

Tolbert's trial counsel requested that Criminal Jury Instruction 5.19 be read to the jury.

> If a person (*insert verb describing defendant's act*) another and the other person consented or there are reasonable grounds to believe that the other has

---

robbery on the one hand, from kidnapping while armed, obstruction of justice and bribery of a witness on the other. Because the evidence against Browner at a trial for the first group of offenses would have been admissible at a separate trial for the second group of offenses in order to prove motive, intent, or absence of mistake, *see Drew v. United States*, 118 U.S.App. D.C. 11, 16, 331 F.2d 85, 90 (1964), the denial of Browner's motion for severance promoted judicial economy and did not prejudice Browner.

11. All four defendants contend the evidence against them was insufficient to sustain their convictions for kidnapping while armed. Each insists that the element of involuntariness was not proven beyond a reasonable doubt. Viewing the evidence in the light most favorable to the government, *United States v. Hubbard*, 429 A.2d 1334, 1337–38 (D.C.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981), and mindful of the jury's function to weigh the evidence and determine credibility, *Boyd v. United States*, 473 A.2d 828, 832 (D.C.1984), we are satisfied that the government presented evidence capable of persuading the jury beyond a reasonable doubt that appellants detained complainants involuntarily. As demonstrated by our recitation of facts above, there was ample testimony regarding restrictions on the movement of complainants. The most vivid evidence of involuntariness was that Kevin used a gun to stop Harvey from leaving on one occasion.

Appellants Tolbert and Washington raise additional issues with respect to the sufficiency of the evidence on the kidnapping while armed charges. Tolbert argues that there was no evidence that he knew that a gun was used to detain complainants, and thus there was no evidence he knew complainants were being detained involuntarily. There was evidence, however, that Tolbert took Harvey to the hospital, rented a motel room, appeared daily to give Kevin and Jay money to buy food for Harvey and Galloway, and showed them a newspaper article referring to their absence as witnesses at the Browner trial. We believe that the jury could reasonably infer from this evidence that Tolbert knew complainants were being detained involuntarily. Appellant Washington argues that, even if Harvey and Galloway were being held against their will, he was merely present and did nothing to further the kidnapping. We believe that the jury could reasonably infer from Washington's comment to Harvey that Kevin was "just doing his job" when he used a gun to prevent her from leaving, that Washington was assisting in the kidnapping, especially since this comment occurred after Washington had previously suggested to Kevin that he accompany Harvey when she went outside on Friday, March 25, 1983, to buy cigarettes.

consented, the crime of _____ has not been committed. Consent may be contained in the words or in the actions of the complainant. It may be expressly or impliedly given, and may be evidenced by the action or inaction of the complainant. Where you find that there have been expressions of consent by the complainant, it is for you to determine whether such expressions were given of a free will or were rather the consequence of the complainant being subject to any physical or mental restraint.

Where evidence of consent by the complainant to the actions of the defendant is present, the government must prove beyond a reasonable doubt that the complainant did not consent to such acts. If you find that the government has failed to prove beyond a reasonable doubt that the complainant did not consent to the defendant's acts, you must find the defendant not guilty.

Criminal Jury Instructions for the District of Columbia, No. 5.19 (3d ed. 1978). The foregoing instruction would have informed the jury that consent may be express or implied, either by action or inaction, and would have reminded the jury that the government had the burden of proving the absence of consent beyond a reasonable doubt. The trial court, following a colloquy with Tolbert's counsel and the prosecutor, decided not to grant the request for a special instruction on consent. The trial court's rationale was that the explanation of the elements of kidnapping sufficed to cover the defense theory of the case.

The final two paragraphs of the following excerpt from the instructions contain the court's advice to the jury on the issues of consent or coercion.

Now, the last charges that you are to consider are charges of kidnapping while armed, and there are two of those; and they again are charges that you are to consider as to all four of the Defendants.

Now, the essential elements of the offense of kidnapping while armed, each of which the Government must prove beyond a reasonable doubt, are as follows:

First, that the Defendant or aider and abettor confined, inveigled, or concealed the Complainant by any means; and secondly, that the Defendant or aider and abettor held or detained or acted with the purpose or intent to hold or detain the Complainant for the purpose of a ransom, reward, or for purposes of keeping that person from going to court; and third, that the Defendant or aider and abettor was armed with or had readily available a deadly or dangerous weapon, as I have already described to you.

Now, to "inveigle" means to lure or entice or lead astray a person by a false representation or promise or other deceitful means.

It is essential to the proof that the Defendant have seized or detained the Complainant by the use of coercion; and that if the Complainant submitted to such a seizure or detention, that she did so involuntarily.

The coercion must be done with the specific intent to confine the victim and may be achieved by mental as well as by physical means.

We must decide whether the trial court abused its discretion in adopting the approach it did on the consent issue.

We regard this issue as a close one. "[A] defendant is entitled to an instruction on his theory of the case, but he is not entitled to dictate the wording of that instruction." *Fludd v. United States*, 336 A.2d 539, 541 n. 3 (D.C.1975). The instructions which the trial court gave did cover the defense theory of the case, as Tolbert's trial counsel effectively conceded in agreeing with the trial court that the reference to involuntariness in the definition of kidnapping corresponded with the defense theory of the case, "lack of involuntariness." The instructions actually given, however, fell short of providing the jury with the full measure of guidance the jury could have used in weighing the substantially conflicting evidence presented at trial bearing on

the issue of consent. This failing could easily have been avoided. At the relatively minimal cost of adding slightly to the length of instructions, the trial court could have agreed to the defense request for standard instruction 5.19.

■ While we believe it would have been more appropriate to have used standard instruction 5.19, and that the trial court approached the limits of permissible discretion in denying that instruction, we decline to hold that the trial court went beyond those limits in this case. We note that the record reflects that the trial court did exercise its discretion after hearing from both sides, and did not deny Tolbert's request without reflection. We hasten to observe that while such an approach by the trial judge was salutary, it did not insulate his ruling from review. More significant is the observation that there is no dispute that the trial court told the jury about the requirement of proof beyond reasonable doubt, and touched on all of the elements of the offense, including involuntariness.

Our analysis of this issue is further informed by reference to two federal appeals court cases which confronted situations bearing some resemblance to this case. In both cases, the appeals court declined to reverse trial courts which refused to give special instructions on consent in kidnapping cases. In *United States v. Herron*, 551 F.2d 1073, 1075 (6th Cir.1977), the trial court declined to give an instruction tendered by the defense which, among other features, would have told the jury that consent could be express or implied. As in our case, the trial court in *Herron* did explain the prosecution's burden of proof and that involuntariness was an essential element of the crime. *Id.* The United States Court of Appeals for the Sixth Circuit held that "[t]he instructions as a whole adequately protected the appellant under his affirmative defense [of consent]." *Id.* at 1076. In *United States v. Fritz*, 580 F.2d 370, 378 (10th Cir.) (en banc), *cert. denied*, 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978), the trial court refused to give a special instruction highlighting the consent defense, and opted instead for an instruction similar to the one given in our case in that it stated that involuntariness was an essential element of the crime without dwelling on the consent issue. We acknowledge that the consent defenses in *Herron* and *Fritz* were significantly weaker than the consent defense mounted here, and that, of course, we are not bound by either decision. Nevertheless, *Herron* and *Fritz* stand at least for the proposition that the kind of instruction given in our case may suffice to cover the defense theory of the case. We hold only that, on the record before us in this case, the trial court, in declining to issue a more detailed instruction on consent, acted "within the range of permissible alternatives." *Johnson v. United States*, 398 A.2d 354, 365 (D.C.1979). We hasten to add that, in circumstances not too much different from those prevailing here, a different view might be taken of such an exercise of discretion.

## V

■ The remaining issues may be disposed of more expeditiously.[12] Appellant Bush contends that the trial court erred in limiting Browner's cross-examination of

---

12. Appellants Bush, Tolbert and Washington press several non-meritorious claims regarding the sufficiency of the evidence underpinning various convictions. We disagree with Bush that the evidence established conclusively that he withdrew from the conspiracy to obstruct justice. Tolbert contends that the complainants did not want to testify anyway, and therefore he should not have been convicted of obstruction of justice and conspiracy to obstruct justice. This contention ignores the wealth of evidence that complainants were detained involuntarily. Finally, Washington challenges the sufficiency of the evidence to support his convictions for obstruction of justice. This challenge founders on the evidence discussed in relation to his conviction for kidnapping while armed.

We have reviewed, and perceive no merit in, appellant Tolbert's contention that the out of court identifications of him by Harvey and Galloway should have been suppressed.

David Sandridge, the robbery complainant, regarding Sandridge's involvement with narcotics. After Browner had elicited admissions from Sandridge that he had received use immunity in exchange for his testimony, and that he had concerns involving narcotics, the trial court prevented Browner from exploring those concerns further. We are satisfied that the trial court permitted sufficient bias cross-examination of Sandridge to comport with the Sixth Amendment right of confrontation. Our scope of review is limited, therefore, to determining whether the trial court, which is in the best position to weigh the utility of the bias cross-examination against the risk of confusing the jury with collateral issues, committed an abuse of discretion mandating reversal. *Springer v. United States,* 388 A.2d 846, 856 (D.C.1978) (citations omitted). We take Bush's failure to object at trial or to do anything else to pursue this line of inquiry as indicating Bush's recognition of the fruitlessness of such a pursuit. Under the circumstances, we detect no abuse of discretion.

■ Appellant Tolbert maintains that the trial court erred in sustaining the government's objection, based on relevance grounds, to the following question put to Galloway: "Now, Ms. Galloway, isn't it a fact that while you were still a Defendant in this case, you failed to appear for court one time; isn't that correct?" At trial, Tolbert argued that the question was relevant to the defense theory of the case, consent. The trial court gave several reasons for its decision to sustain the objection, including the collateral nature of the issue and the fact that Galloway's interests in testifying as a defendant were different than her interests in testifying as a witness. We are satisfied that no abuse of discretion occurred. *See Mitchell v. United States,* 408 A.2d 1213, 1215 (D.C.1979) (trial judge did not abuse discretion in declining to admit evidence of complaining witness' refusal to speak to defense investigator).

■ Appellant Bush argues that the prosecution failed to discharge its duty under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1971), to disclose fully the terms of the plea agreements negotiated with Harvey and Galloway. We find no error. The jury was adequately informed of the terms of the plea agreements, and could consider them in evaluating the testimony of Harvey and Galloway.

*Affirmed.*

NEWMAN, Associate Judge, concurring in part and dissenting in part:

I join the court's opinion save for Section IV. I would hold that the trial court erroneously exercised its discretion when it denied the defendants' Bush, Browner, and Tolbert's request for a consent instruction as to the kidnapping charge. Since I cannot conclude that this error was harmless, I would hold that the trial court abused its discretion. *See Johnson v. United States,* 398 A.2d 354 (D.C.1979).