Rahshawn KING & Christopher
T. Holmes, Appellants,

v.

UNITED STATES, Appellee.

Nos. 10–CF–149, 10–CF–318.

District of Columbia Court of Appeals.

Argued Sept. 13, 2012.
Decided Aug. 22, 2013.

Sloan S.J. Johnston, for appellant King.

Donald Dworsky, for appellant Holmes.

Leslie Ann Gerardo, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, John P. Mannarino and Todd W. Gee, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, BLACKBURNE–RIGSBY, Associate Judge, and REID, Senior Judge.

WASHINGTON, Chief Judge:

Appellants Rahshawn King and Christopher Holmes were convicted after a joint jury trial of carjacking and robbing James Nelson at gunpoint in southeast D.C. on October 24, 2008. In addition, Holmes was independently convicted of obstruction of justice and conspiring to obstruct justice based on phone calls he made from jail to Terrence Connor between January 10, 2009, and February 24, 2009.

On appeal, Holmes argues that the trial court erred in allowing a police officer and a detective to testify as lay witnesses to the meaning of certain "street lingo" used in the phone calls between himself and Connor. King argues that the trial court erred in failing to sever his armed carjack-ing and robbery charges from Holmes' obstruction of justice charges and also argues that his two convictions for possession of a firearm during a crime of violence ("PFCV") should be merged. For the reasons stated below, we hold that the trial court did not err in allowing the police officers to offer lay opinion testimony on the meaning of certain street lingo and we reject King's contention that the trial court erred in allowing his carjacking and robbery counts to be joined with Holmes' obstruction count. However, we do agree that King's two PFCV counts merge and therefore, remand the case to the trial court so that one of King's two PFCV convictions can be vacated.

I.

On October 24, 2008, King and Holmes pulled up in a car behind James Nelson as he was steps away from his car. King exited the car driven by Holmes and approached Nelson, demanding at gunpoint that Nelson hand over the car keys and $1,000 in gambling winnings that he held in his hand. Nelson did as demanded and King got into Nelson's car, driving away with Holmes following behind in his car. A police officer who was parked near the incident heard gunshots and saw Nelson and Holmes' cars driving away "bumper to bumper." The officer began to follow the cars and a chase ensued, first by car, and then by foot once King abandoned the car and began running. King was apprehended, but Holmes, who escaped by car during the police car chase, was not apprehended until November 20, 2008.

Between January 10, 2009, and February 24, 2009, Holmes placed a series of calls to Terrence Connor from the District of Columbia jail where he was incarcerated. These calls were recorded and revealed that Holmes was conspiring with Connor to keep Nelson from "ratting and

shit." Holmes was charged with obstruction of justice and conspiring to obstruct justice.

King and Holmes were charged with armed robbery;[1] armed carjacking;[2] unauthorized use of a vehicle ("UUV");[3] fleeing from a law enforcement officer;[4] reckless driving;[5] and possession of a firearm during the commission of a crime of violence.[6] In addition, King was charged with two counts of destruction of property[7] and Holmes was charged with conspiracy to obstruct justice[8] and obstruction of justice.[9] King and Holmes were tried together before a jury. Both appellants filed motions to sever defendants and counts pursuant to Super. Ct.Crim. R. 8(b) and 14, but the motions were denied by the trial court on the basis that the obstruction of justice charge "followed logically upon and was the sequel to [the] underlying carjacking," making the charges part of the "same transaction or occurrence." During the trial, Detective Francis and United States Park Police Officer William Sepeck, who listened to 30 to 40 hours of Holmes' jail telephone calls, testified, over defense counsel's objection, as lay witnesses to the meaning of certain "street" terms used in the conversations between Holmes and Connor. On October 15, 2009, the jury returned verdicts of guilty as to all counts.

## II.

■ Appellant Holmes claims that the trial court abused its discretion in allowing the two police witnesses to testify as to the meaning of "street lingo" in Holmes' recorded phone calls with Connor. Specifically, Officer Sepeck testified that the term "gleezy" is a "street term for the gun named Glock," and that in the context of Holmes and Connor's conversations, which were played to the jury, "40" meant a .40 caliber semiautomatic gun.[10] Detective Francis testified about the term "bagged" saying, "I've heard the kids talk about . . . bagging somebody, robbing them, getting their stash, bagging their stash. Maybe that's it. Bagging means I got them. You know, it's like bragging about it."[11] Officers Sepeck and Francis based their street lingo interpretations on their lengthy experience working on criminal investigations in southeast D.C. and speaking regularly about crime with young people in that community. At trial, Holmes' counsel objected to this foundation as insufficient to establish the officers' competence to give an opinion. On appeal, Holmes contends that the officers inappropriately testified as lay witnesses because they did not have

1. D.C.Code §§ 22–2801, –4502 (2001).

2. D.C.Code §§ 22–2803, –4502 (2001).

3. D.C.Code § 22–3215 (2001).

4. D.C.Code § 50–2201.05(b)(2) (2001).

5. D.C.Code § 50–2201.04(b) (2001).

6. D.C.Code § 22–4504(b) (2001).

7. D.C.Code § 22–303 (2001).

8. D.C.Code §§ 22–1805a, –2403, –722(a)(6) (2001).

9. D.C.Code § 22–722(a)(6) (2001).

10. Officer Sepeck also testified to the meaning of the term "hot" ("the fourth floor of the jail, which is for cooperators"), "kill" ("I've got you, no problem"), "bag" ("it could mean arrested"), "quap" ("money"), "kirk out" ("freak out"), "get-got" ("it could mean arrested").

11. Detective Francis also testified to the definition of "UUV." UUV is used in the recorded calls in the context of a conversation about how Connor needs to keep Nelson from ratting about the carjacking. Holmes says: "[D]ey can charge it as ah juvenile man, UUV. . . ."

the requisite personal experience with or knowledge of the street language, and were testifying about a specialized subject, beyond the ken of the average lay person. We review for abuse of discretion the admission or exclusion of evidence alleged to be in violation of Rule 701.[12] *Sanders v. United States,* 809 A.2d 584, 596 (D.C. 2002).

Whether police officer testimony interpreting slang or jargon qualifies as lay or expert testimony is an issue of first impression for this court. Federal Rule of Evidence 701 provides that a lay witness's testimony in the form of opinions or inferences "is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." This court has allowed police officers to offer lay testimony about their observations of the criminal event in question and give lay opinions about the event in question based on their observation of similar events during their professional experience. *See, e.g., Carter v. United States,* 614 A.2d 913, 919 (D.C.1992) (narcotics officer allowed to testify as a lay witness that what he had seen from an observation post "led [him] to believe that a narcotic transaction had

occurred"); *Harris v. District of Columbia,* 601 A.2d 21, 23 (D.C.1991) (officers properly testified as lay witnesses that "based on their experiences dealing with persons under the influence of drugs, they believed that [the defendant] was under the influence of some substance."); *Hill v. United States,* 541 A.2d 1285, 1288 (D.C. 1988) (allowing a police officer to testify as a lay witness about the general practice of the police department of which he was a member because it was "based on his personal knowledge"). Beyond these cases, however, we have given trial courts little guidance on when lay testimony becomes expert testimony, especially since Federal Rule of Evidence 701 was amended in 2000 to keep experts from testifying "in lay witness clothing."[13] We seek here to clarify the line between lay and expert testimony and hold that the trial court properly admitted the officers' testimony as lay witness testimony since the witnesses based their opinions on their personal experiences and observations and used reasoning processes familiar to the average person in everyday life to reach their proffered opinion.

The majority of cases addressing the "fine"[14] line between police officers' expert and lay testimony have arisen in the context of drug transactions and drug code

---

**12.** Although the Federal Rules of Evidence are inapplicable in the D.C. Superior Court and the D.C. Court of Appeals, Federal Rule of Evidence 701, regarding opinion testimony by lay witnesses, "states the law as it has developed in this jurisdiction." S.W. GRAAE ET AL., THE LAW OF EVIDENCE IN THE DISTRICT OF COLUMBIA 7–1 (5th ed. 2012).

**13.** 701 (c) was added as part of the 2000 amendments to the Federal Rules of Evidence to avoid "the risk that reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed.R.Evid. 701 advisory committee's note to 2000 amendment.

**14.** *See United States v. Perkins,* 470 F.3d 150, 155 (4th Cir.2006) ("[T]he line between lay opinion testimony under Rule 701 and expert testimony under Rule 702 'is a fine one.'" (quoting 3 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, *FEDERAL RULES OF EVIDENCE MANUAL* 701–14 (9th ed. 2006))); *United States v. Ayala–Pizarro,* 407 F.3d 25, 28 (1st Cir.2005) ("The line between expert testimony under Fed.R.Evid. 702 ... and lay opinion testimony under Fed.R.Evid. 701 ... is not easy to draw." (quoting *United States v. Colon Osorio,* 360 F.3d 48, 52–53 (1st Cir. 2004))).

interpretation. Courts have been reluctant to allow police officers to offer lay opinions about the meaning of drug slang or code words based on their past experience investigating drug crimes. These courts have broadly concluded that testifying on the basis of past professional experience is "specialized knowledge" appropriate only for expert testimony.[15] We find more force, however, in the Second Circuit's opinion in *United States v. Garcia*, 413 F.3d 201 (2nd Cir.2005), holding that "a court must focus on the reasoning process' by which a witness reached his proffered opinion." *Garcia*, 413 F.3d at 215 (quoting 4 WEINSTEIN'S FEDERAL EVIDENCE § 701.03[1]). In *Garcia*, an officer's opinion about the role of various drug conspirators depended on knowledge gained from his experience reviewing "thousands of intercepted conversations in the course of various narcotics investigations." *Id.* at 216–17. The court held that this experience was "certainly outside the ken of the average person" and that the officer's testimony "that drug dealers generally used code words when referring to their illicit transactions" could not be lay testimony as it was not informed "by reasoning processes familiar to the average person in everyday life." *Id.* at 216. Instead, the officer's "reasoning process depended ... on specialized training and experience." *Id.* Applying *Garcia's* test, the drug code cases cited above are more appropriately interpreted as being limited to their facts, holding no more than past professional experience in a complex field, inaccessible to the average lay person and requiring specific training, like narcotics investigations, is "specialized knowledge."

The Advisory Committee Note to the 2000 amendments to the Federal Rules of Evidence supports the Second Circuit's focus on the reasoning process to distinguish lay from expert testimony. The Notes explain that lay testimony is that which "results from a process of reasoning familiar in everyday life," whereas "an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." Fed.R.Evid. 701, advisory committee's note to 2000 amendment (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn.1992)).

■ We adopt the Second Circuit's "process of reasoning" approach for distinguishing lay from expert testimony. We find that, per *Garcia*, the trial court did not abuse its discretion by allowing the two officers to testify as lay witnesses. The officers offered their opinions about the street lingo based on their personal experiences and observations interacting with youth in the D.C. streets while investigating crimes. We are satisfied that a proper foundation was laid for the officers' opinion testimony because their opinions

---

**15.** *See, e.g., United States v. Smith*, 640 F.3d 358, 365 (D.C.Cir.2011) (agent testifying about drug slang "based on his experience in other investigations and his experience as a narcotics investigator, as opposed to simply his personal perceptions in the case ... would have to satisfy Rule 702."); *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir.2010) (an officer's interpretation of wiretapped phone calls based on his "credentials and training, not his observations from the surveillance" did not qualify him to offer lay testimony); *United States v. Wilson*, 605 F.3d 985, 1026 (D.C.Cir.2010) (former drug dealer's testimony based on his previous dealing experience was "specialized"); *United States v. York*, 572 F.3d 415, 421–22 (7th Cir.2009) ("A law enforcement officer's understanding of the drug trade [such as the meaning of drug code words], which comes from that officer's prior experience policing illicit narcotics transactions, is 'specialized knowledge' within Rule 702."); *United States v. Villarman-Oviedo*, 325 F.3d 1, 13 (1st Cir.2003) (officer's years of experience and training in narcotics investigations were "specialized knowledge").

were sufficiently grounded in perceptions gained through their personal experiences. In addition, the reasoning process the officers employed to interpret the street language was the everyday process of language acquisition. The officers did not use any special training or scientific or other specialized professional knowledge to form their opinions about the meaning of the language used by the individuals in this case.

The present case is analogous to the Fourth Circuit's decision in *United States v. Perkins*, 470 F.3d 150 (4th Cir.2006), where the court held that a police officer could give a lay opinion about the excessiveness of another officer's use of force based on his personal observations of other officers' use of force during his time as a police officer. The court held that because the observations were "common enough and require[d] such a limited amount of expertise ... they can, indeed, be deemed lay witness opinion[s]." *Perkins*, 470 F.3d at 156 (quoting *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir.1995)). Although the officer's professional experience in *Perkins* gave him the unique opportunity to regularly observe fellow officers using force, what ultimately made the testimony lay testimony was the fact that the officer's knowledge was formed through his simple, personal observations of human conduct in his every day work.[16] Here, Officer Sepeck and Detective Francis testified not only to knowledge acquired through basic reasoning processes, but

knowledge acquired from personal experiences talking to people on the street that are accessible to an average person. Consequently, we affirm the trial court's admission of the officers' testimony and Holmes' conviction.

## III.

■■■■ Appellant King claims that the armed carjacking and other offenses that occurred on October 24, 2008, were improperly joined with Holmes' obstruction of justice offenses under Super. Ct.Crim. Rule 8(b). King contends that these charges shouldn't have been joined because they were not part of the "same act or transaction." Specifically, King highlights the fact that the obstruction of justice offenses occurred months after the carjacking, that the obstruction of justice was not the inevitable result of the underlying crime, and that King did not know about or participate in the obstruction of justice, which was Holmes' independent action. Whether joinder is proper under Super. Ct. Crim. Rule 8 is a question of law which we review *de novo*. *Ray v. United States*, 472 A.2d 854, 857 (D.C. 1984).

This court has previously addressed this specific issue and the case at hand presents no distinguishing facts. In *Davis v. United States*, 367 A.2d 1254 (D.C.1976), we held that joinder of counts in a multidefendant prosecution is proper under Rule 8(b):

---

16. *See also United States v. Hamaker*, 455 F.3d 1316, 1331–32 (11th Cir.2006) (an FBI financial analyst who reviewed and summarized over seven thousand financial documents was not an expert witness even though "his expertise and the use of computer software may have made him more efficient" because he did not testify based on his financial expertise, but simply added and subtracted numbers and compared them "in a straightforward fashion"); *United States v.*

*Ayala–Pizarro*, 407 F.3d 25, 29 (1st Cir.2005) ("[I]t require[d] no special expertise for [an officer] to conclude, based on his [past] observations, that places which sell drugs are often protected by people with weapons."); *United States v. Weaver*, 281 F.3d 228, 231 (D.C.Cir. 2002) (that the witness performed "routine computations and culling through of [cash register logs]" to arrive at his conclusions did not require him to be qualified as an expert).

(1) where the offenses are committed as a means to a specific common end, or where they are directed toward some shared goal; (2) where one offense logically leads to another; and (3) where the offenses are part of a common scheme or plan, involving the same place, a short period of time, and a similar modus operandi, so that there is necessarily a substantial overlap in proof of the various crimes and 'it would be difficult to separate proof of one from the other.' *Davis,* 367 A.2d at 1262 (internal citations omitted).

In *Bush v. United States,* 516 A.2d 186, 191 (D.C.1986), we specifically found joinder of a co-defendant's subsequent obstruction of justice charge to satisfy the second *Davis* prong because the underlying crime "logically leads" to the obstruction of justice offense, even though there was "no conspiracy ... embracing both the underlying crimes and the cover-up." Even though the cover-up "was not the inevitable result of the commission of the underlying crimes," we found the "cover-up surely was a sequel to those crimes." *Bush,* 516 A.2d at 192; *see also Sams v. United States,* 721 A.2d 945 (D.C.1998) (same); *Taylor v. United States,* 603 A.2d 451 (D.C.1992) (holding the same as to a subsequent perjury charge).

King contends that the present case is not governed by *Bush* because, unlike the *Bush* appellant who was involved in the obstruction of justice, but not the underlying crime, King was involved in the armed carjacking and robbery, but not the obstruction of justice. This situation, he argues, makes joinder of claims far more prejudicial to his case. However, in *Sams* we found joinder to not be prejudicial, and thus appropriate, even though appellant had participated in the underlying assault, but not the obstruction of justice, which was independently effectuated by his co-

defendant. *Sams,* 721 A.2d at 953–55. Consequently, we affirm the trial court's denial of King's Rule 8(b) severance motion.

### IV.

Finally, King contends that his two PFCV convictions should be merged pursuant to *Nixon v. United States,* 730 A.2d 145 (D.C.1999). We agree. "[M]ultiple PFCV convictions will merge, even if the predicate felony offenses do not merge, if they arise out of a defendant's uninterrupted possession of a single weapon during a single act of violence." *Matthews v. United States,* 892 A.2d 1100, 1106 (D.C. 2006) (citing *Nixon,* 730 A.2d at 153). Here, King's PFCV convictions were based on his underlying carjacking and armed robbery felony convictions. These two felonies were effectuated by the same violent act at the same moment: King exited the Nissan, pointed a gun at Nelson and said "give that shit up," at which point he took both Nelson's money and car keys and immediately drove off with both. Thus, we remand this case with an instruction to vacate one of King's two PFCV convictions.

### V.

For the foregoing reasons, the judgment of the trial court is hereby affirmed, except that we remand for the trial court to vacate King's conviction on one of the PFCV counts.

*So ordered.*